UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT D. CRAWFORD,<br>　　　　*Plaintiff,*<br>　　　　　*v.*<br>CITY OF NEW LONDON; CORNELIUS RODGERS;<br>GRAHAM MUGOVERO; LAWRENCE KEATING;<br>TODD BERGESON; MICHAEL CAVANAUGH;<br>ERIC HULLAND; and RUSSELL MACDONALD,<br>　　　　*Defendants.* | Civil No. 3:11-cv-1371 (JBA)<br><br>March 12, 2015 |

**RULING ON PLAINTIFF'S MOTIONS FOR ATTORNEYS' FEES**

In these post-judgment motions, Plaintiff, who was awarded judgment in the amount of $50,000 (*see* [Doc. # 141]) in his excessive force claim against Defendant Graham Mugovero for violations of his Fourth and Fourteenth Amendment rights, seeks [Doc. # 123] attorneys' fees and costs of litigation totaling $268,045 and $11,252,26, respectively, as well as fees for post-judgment legal services [Doc. ## 142, 143] in the amount of $33,295.14 and post-judgment interest on the attorneys' fee award. Defendant opposes [Doc. ## 127, 144], arguing that the hourly rates for some of Plaintiff's attorneys are not reasonable, the hours billed are excessive, the documentation is deficient, and many of the costs Plaintiff claims are not recoverable. For the reasons that follow, Plaintiff's motion [Doc. # 123] for attorneys' fees is granted with modification and Plaintiff's supplemental motion [Doc. ## 142, 143] for post-judgment attorneys' fees and interest is also granted with modification.

I.       **Background**

On June 2, 2014, after a four-day trial, a jury returned a verdict finding Defendant Graham Mugovero liable under 42 U.S.C. § 1983 for the violation of Plaintiff Robert Crawford's Fourth and Fourteenth Amendment right to be free from excessive force. (Jury Verdict [Doc. # 115] at 1.)  The jury returned a verdict in favor of Plaintiff, finding that he was entitled to $15,000 in economic damages and $35,000 in non-economic damages, for a total award of $50,000 in compensatory damages, but found that Plaintiff was not entitled to punitive damages.[1]

II.      **Legal Standard**

In a federal civil rights action pursuant to § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b); *see also Matusick v. Erie Cnty. Water Auth.,* 739 F.3d 51, 84 (2d Cir. 2014) ("We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." (citations and internal quotation marks omitted)).

In interpreting § 1988, the Second Circuit has moved away from the "lodestar" approach to attorneys' fees, which multiplies an attorney's hourly rate and the number of hours he or she worked and adjusts the result, if necessary, to arrive at a reasonable fee award, instead adopting a case-specific approach for determining a reasonable fee to

---

[1] The Court initially granted Defendant a remittitur related to certain unproved medical costs [Doc. # 135], but upon consent motion by both parties [Doc. # 139], the Court entered judgment [Doc. # 141] in favor of Plaintiff in the original amount of $50,000.

award.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d

110 (2d Cir. 2007) ("*Arbor Hill I*"), *amended on other grounds by* 522 F.3d 182, 184 (2d

Cir. 2008) ("*Arbor Hill II*").  The Second Circuit instructed district courts to "step[ ] into

the shoes of the reasonable, paying client, who wishes to pay the least amount necessary

to litigate the case effectively" in considering "what a reasonable, paying client would be

willing to pay."  *Id.* at 184.  To do this, the Court should utilize both the factors

articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),

*abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989),[2] as well

as certain client-related factors:

> [T]he district court, in exercising its considerable discretion, [should] bear
> in mind all of the case-specific variables that we and other courts have
> identified as relevant to the reasonableness of attorney's fees in setting a
> reasonable hourly rate.  The reasonable hourly rate is the rate a paying
> client would be willing to pay.  In determining what rate a paying client
> would be willing to pay, the district court should consider, among others,
> the *Johnson* factors; it should also bear in mind that a reasonable, paying
> client wishes to spend the minimum necessary to litigate the case
> effectively.  The district court should also consider that such an individual
> might be able to negotiate with his or her attorneys, using their desire to
> obtain the reputational benefits that might accrue from being associated
> with the case.  The district court should then use that reasonable hourly

─────────────

[2] The *Johnson* factors include (1) the time and labor required by an attorney; (2)
the novelty and difficulty of the questions presented by the litigation; (3) the level of skill
required to perform the legal service properly; (4) the preclusion of other employment by
the attorney because of acceptance of the case; (5) the attorney's customary hourly rate;
(6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or
the circumstances; (8) the amount involved in the case and the results obtained; (9) the
experience, reputation and ability of the attorneys; (10) whether the case is undesirable;
(11) the nature and length of the professional relationship with the client; and (12)
awards in similar cases.

rate to calculate what can properly be termed the "presumptively reasonable fee."

*Arbor Hill I*, 493 F.3d at 117–18.

Once the court has determined the "presumptively reasonable fee," it "may still adjust that amount" upward or downward "based on relevant factors specific to the instant case," such as the level of success the plaintiff attained. *Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, No. 3:03-CV-599 (CFD), 2011 WL 721582, at *3 (D. Conn. Feb. 22, 2011); *see also Robinson v. City of New York*, No. 05 CIV. 9545 (GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009) ("Following the determination of the presumptively reasonable fee, the court must then consider whether an upward or downward adjustment of the fee is warranted based on factors such as the extent of plaintiffs' success in the litigation.").

### III. Discussion

In his Application and Supplemental Application for Attorneys' Fees, Plaintiff seeks fees totaling $187,515 (416.7 hours at $450/hour) for Attorney A. Paul Spinella, $53,900 (215.6 hours at $250/hour) for Attorney Peter C. White, and $59,925 (129.3 hours at $450/hour and 22 hours at $125/hour) for Attorney David K. Jaffe, as well as costs totaling $11,252.26, and post-judgment interest.

#### A. Reasonableness of Hourly Rates

Defendant objects to the hourly rates claimed by Attorneys Spinella, White, and Jaffe as unreasonably high. He contends that Plaintiff's attorneys' rates exceed prevailing market rates; this case was straightforward and presented no novel or difficult questions of law; and Plaintiff achieved only limited success.

4

Attorney Spinella, lead counsel for Plaintiff, and the owner of Spinella & Associates, LLC in Hartford, CT, avers that he has approximately 34 years of criminal and civil litigation experience, with civil litigation being "principally in the area of police misconduct." (*See* Spinella Aff., Ex. E to Att'ys' Fees Appl. [Doc. # 123-6] ¶¶ 1, 6, 7.) He has successfully represented plaintiffs in police misconduct claims involving every major municipality throughout the state, lectured at and sponsored seminars on civil rights and police misconduct, written on civil rights and constitutional matters, and been actively involved in the Connecticut Bar Association. (*Id.* ¶ 10.) Attorney Spinella seeks $450/hour for his work on this case. (*See* Spinella Billing Rec., Ex. A to Att'ys' Fees Appl. at 10; Spinella Suppl. Billing Rec., Ex. A to Suppl. Att'ys' Fees Appl. [Doc. # 143] at 2.)

Attorney Jaffe, a partner at Brown Paindiris & Scott in Hartford, CT has served as Chairperson of the Human Rights Section of the Connecticut Bar Association and Treasurer of the American Civil Liberties Union of Connecticut. (Jaffe Aff., Ex. G to Att'ys' Fees Appl. ¶¶ 1, 3.) His primary area of practice for thirty years has been civil rights litigation, particularly in Fourth and Fourteenth Amendment police misconduct cases. (*Id.* ¶ 3.) Attorney Jaffe avers that he has "specialized more and more in police misconduct cases" and "there are few other attorneys in the state who are as knowledgeable in such complex police misconduct cases or take them on a regular basis." (*Id.* ¶ 15.) Attorney Jaffe also seeks $450/hour for his work on this case. (*See* Jaffe Billing Rec., Ex. C to Att'ys' Fees Appl. at 1.)

Attorney White, an associate of Spinella & Associates, LLC in Hartford, CT has been practicing law in Connecticut for eight years and served as a law clerk to state court judges for two years. (White Aff., Ex. F to Att'ys' Fees Appl. ¶¶ 2, 3.) Attorney White

5

seeks $250/hour for his work on this case.  (*See* White Billing Rec., Ex. B to Attys' Fees Appl. at 9.)

In arguing that Attorneys Spinella, Jaffe, and White's rates are above the prevailing market rates, which Defendant claims are between $250 and $400 an hour for experienced attorneys, Defendant relies primarily on cases decided in 2008 or earlier. (*See* Obj. to Fees Appl. [Doc. # 127] at 6–7.)   These cases are outdated, but an examination of more recent attorneys' fees awards in this district demonstrates that $450/hour is on the high end and is generally reserved for particularly distinguished attorneys successfully taking on difficult or novel cases.  *See, e.g.,Valley Hous. Ltd. P'ship v. City of Derby*, No. 3:06CV1319 (TLM), 2012 WL 1077848, at *5–6 (D. Conn. Mar. 30, 2012), *appeal dismissed* (Nov. 14, 2012) (awarding $400 hourly rate to attorney with thirty years of extensive legal experience in civil rights litigation and $485 hourly rate to attorney with forty-three years of legal experience whom the court described as "highly skilled and experienced"); *Vereen v. Siegler*, No. 3:07CV1898 (HBF), 2011 WL 2457534, at *3 (D. Conn. June 16, 2011) (awarding a civil rights attorney with forty-three years of experience an hourly rate of $400 and his associate attorney a rate of $250/hour); *Bridgeport & Port Jefferson Steamboat Co.*, 2011 WL 721582, at *6 (awarding $425 per hour to attorneys with thirty to forty-three years of experience and $225 to $275 per hour to associates); *Serricchio v. Wachovia Securities, LLC*, 706 F. Supp. 2d 237, 255 (D. Conn. 2010) (finding that a rate of $465 per hour is reasonable "[b]ecause of [the attorney's] extensive experience, high reputation, and remarkably successful results.").  None of the attorneys seeking fees here reference the amount of fees they have been awarded by other

courts.³  Absent this information, and in light of the fact that this case did not present any novel or complex issues, $450/hour appears somewhat excessive, and Attorney Spinella and Jaffe's fees will be awarded at the rate of $410/hour.  Attorney White's rate will not be reduced, as it appears to be in line with the rates charged by other associates with his level of experience.

### B.  Reasonableness of Hours Requested

Defendant objects to Attorneys Spinella, White and Jaffe's requested hours for four reasons: (1) they were excessive; (2) they were duplicative and redundant; (3) they were vague or inaccurate; and (4) they concerned activities that were unnecessary, including claims that were untimely, unsuccessful, or dropped by Plaintiff.

### 1.  Excessive Hours

Defendant asserts, documenting specific entries he believes to be excessive and why, that Attorneys Spinella and White's billing records "evince that far too much time was spent on particular motions and activities, some of which . . . were patently unsuccessful, unnecessary, untimely, or related to claims that the Plaintiff did not pursue at trial."  (Obj. to Fees Appl. at 12; *see* Obj. to Suppl. Fees Appl. [Doc. # 144] at 4.)

---

³ Neither Attorney Spinella nor Attorney Jaffe has been awarded fees in reported cases in this Circuit since 1989.  However, they did obtain a fee award of $250 an hour in state court in 1998 in an excessive force case.  *See Laudano v. City of New Haven*, No. 330523, 1998 WL 281824, at *2 (Conn. Super. Ct. May 14, 1998) *aff'd* 58 Conn. App. 819 (2000).  That award was in line with what the District of Connecticut was awarding lead counsel in excessive force cases at the time.  *See Rodriguez v. Abbatiello*, 30 F. Supp. 2d 274, 278 (D. Conn. 1998) (awarding $250/hour to lead counsel and $150/hour to associate).

However, a review of time entries cited by Defendant does not persuade the Court that they are so extreme as to warrant preclusion.

Defendant additionally objects to Attorney Jaffe's billing of 111.7 hours although he worked on the case for just two months, had very limited involvement in trial, and did not serve as lead attorney. (Obj. to Fees Appl. at 14.) But, a short period of involvement in the case alone is not a reason to reduce an attorney's hours since that involvement may be intense, particularly as here, when related to trial preparation and attendance.

## 2. Duplicative and Redundant Entries

Defendant lists a number of entries in Plaintiff's billing records that he claims are duplicative or redundant. (Obj. to Fees Appl. at 15–18; Obj. to Suppl. Fees Appl. at 4.) Plaintiff does not dispute that the entries are the same, but he maintains that they are not duplicative; they simply represent work completed over a period of several days. (Reply [Doc. # 134] at 6–12.) The nature of the entries does not enable the Court to make this determination and a reduction is required to account for duplication. On February 28, 2012, Attorney Spinella billed 3.5 hours for "[f]inaliz[ing] and fil[ing] plaintiff's discovery requests," an activity that does not lend itself to completion on another date two months later, but on April 24 and 25, 2012, he billed another 3.7 hours for the same activity. (*See* Spinella Billing Rec. at 3.) Similarly, on October 14, 2011, Attorney Spinella billed 2.9 hours for "[d]raft[ing] and fil[ing] Reply to Special Defenses" and "[l]egal research re: same," and a month later, on November 14, 2011, he billed 3.2 hours for substantially the same work. (*Id.* at 2.) Finally, on June 1, 2012, Attorney Spinella billed one hour for "[p]repar[ing] and fil[ing] Joint Status Report" and then billed another hour on the same day for "[f]il[ing] Joint Status Report." (*Id.* at 3.) As such, Attorney Spinella's hours will

8

be reduced by $2870 (7 hrs x $410/hr). Because Attorneys White and Jaffe's billing records appear to be devoid of similar clearly duplicative entries, there is no basis for reducing their fees for this reason.

### 3.  Vague and Inaccurate Entries

Defendant contends that there are "a plethora of time entries that are vague, unclear, or inaccurate such that the Court cannot discern their reasonableness." (Obj. to Fees Appl. at 18; Obj. to Suppl. Fees Appl. at 4–7.)     Counsel seeking fees are "not required to record in great detail how each minute of [their] time was expended," *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983), but they are obliged "to keep and present records from which the court may determine the nature of the work done, [and] the need for and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested," *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir. 1987) (rejecting time records with one description for an entire day's work).  "[C]ounsel should at least identify the general subject matter of his [or her] time expenditures," and in the absence of such identification, a court may refuse to award fees based on those entries.  *Electro–Methods, Inc. v. Adolf Meller Co.*, 473 F. Supp. 2d 281, 305–06 (D. Conn. 2007).

Courts in this district, including this Court, have reduced fee awards when time entries do not refer to the specific matter worked on.  While "preparation for hearing" is a permissible time entry not subject to reduction because it refers to a specific event and allows for a determination of the reasonableness of time spent, entries like "work on various items" and "work on documents" are too vague for a court to determine the reasonableness of time spent.  *Electro–Methods*, 473 F. Supp. 2d at 305–06 (reducing

award because "work on documents" and "work on various items" was too vague for the court to determine the reasonableness of time spent); *see also Rabin v. Wilson–Coker*, 425 F. Supp. 2d 269, 272–73 (D. Conn. 2006) (reducing the number of hours by five percent because the billing records contained entries such as "work on brief," even though most of the time entries were sufficiently detailed); *Mr. & Mrs. B. v. Weston Bd. of Educ.*, 34 F. Supp. 2d 777, 781 (D. Conn. 1999) ("Entries stating such vague references as 'review of file,' 'review of correspondence,' 'research,' 'conference with client,' and 'preparation of brief' do not provide an adequate basis upon which to evaluate the reasonableness of the services and hours expended on a given matter."). Having practiced in this district for a long time, counsel should by now be familiar with the degree of specificity required in billing records.

Although the majority of Plaintiff's entries at least identify the general subject matter of the work performed, some are block-billed or impermissibly vague as to the tasks performed. These include the following entries, whose non-descriptive portions are in bold:

| Attorney | Entry | Date | Hours Billed |
|---|---|---|---|
| Spinella | "Review New London Police Department's FOI response; **file review**" | 9/29/10 | 1.2 |
| Spinella | "**Conference with client**; review history and addresses of all fact witnesses and contact of same" | 10/16/10 | 2.4 |
| Spinella | "**Conference with client**" | 7/30/11 | 1.5 |
| Spinella | "**Email communication and telephone call to client**" | 8/3/11 | 0.3 |
| Spinella | "Legal research re: complaint; **telephone call to client**" | 8/10/11 | 2.4 |
| Spinella | "**review file**; prepare complaint" | 8/17/11 | 3.5 |
| Spinella | "Review court order re: filing deadlines; **review** | 2/1/13 | 1 |

| | of file; **telephone call to client**" | | |
|---|---|---|---|
| Spinella | "Review of court order denying Motion for Extension of Time; **review of file**" | 2/27/14 | 0.5 |
| Spinella | "Finalize and file Motion to Modify Case Management Order; correspondence to Dr. Snayd, Dr. Curland, Dr. Shifreen, Dr. Oakley; review of medical file; **telephone Conference with client**" | 6/10/13 | 2.8 |
| Spinella | "**Meeting with client; review file**" | 6/22/13 | 1.5 |
| Spinella | "Expert Witness disclosure of Dr. Oakley and DR. Shilling; review medical file; **telephone call to client**" | 8/16/13 | 1.8 |
| Spinella | "**Conference with Attorney David Jaffe**" | 4/22/14 | 1 |
| Spinella | "Review of Defendants" motion Objecting to Lost Income evidence; **telephone call to client**" | 5/6/14 | 1 |
| White | "Opposition to Summary Judgment: finalize affidavits; **phone conference with client**; legal research re: basis for striking defendants' 56A1 Statement of Material Facts as inadequate under Fed. R. Civ. P. 56; motion to strike undisputed facts" | 10/22/13 | 2.7 |

While many of these entries are block-billed with other entries that are not impermissibly vague, individualized time-for-task information is lacking and such "[b]lock-billing can make it difficult for a court to conduct its reasonableness analysis, because" as is the case here, "a single billing entry might mix tasks that are compensable with those that are not." *Hnot v. Willis Grp. Holdings Ltd.*, No. 01 CIV. 6558 GEL, 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008).  Because the Court cannot determine what portion of the total billed time was used for what purpose, the non-vague entries must necessarily be struck along with the impermissible entries.  Thus, Attorney Spinella's fee will be reduced by $8,569 (20.9 hrs x $410/hr) and Attorney White's fee will be reduced by $675 (2.7 hrs x $250/hr).

Defendant also notes that two of the motions for which Attorney Spinella billed and one motion for which Attorney White billed were either not filed by Plaintiff or were not filed at all.  (*See* Spinella Billing Rec. at 7, 8 (Attorney Spinella billed one hour for preparing and filing Motion for Continuance of Trial Date when in fact that motion was filed by Defendant; Attorney Spinella also billed one hour for review of Defendants' Motion in Limine to Preclude Expert Testimony when in fact no such motion was filed by Defendants); White Suppl. Billing Rec., Ex. C to Suppl. Att'ys' Fees Appl. at 3 (Attorney White billed 1.5 hours for drafting the consent motion to entry of original judgment, but that motion was drafted and filed by Defendants).)  Defendant next argues that Attorney Jaffe's entry of 0.5 hours for "review and updating of hourly billing statement" should be discounted as not in furtherance of Plaintiff's case.  (*See* Jaffe Billing Rec. at 6.)  Finally, Defendant argues that Attorney White's entry of "travel to Court delivery of exhibit book to Judge Arterton's chambers" was improper because it was billed at an associate rate rather than a paralegal rate although it was an administrative task.  (*See* White Billing Rec. at 7.)

Although Defendant is clearly correct that Plaintiff may not recover for work on non-existent motions or for paralegal work (i.e. not requiring an attorney) at an attorney's hourly rate, s*ee Cohen v. W. Haven Bd. of Police Commr's*, 638 F.2d 496, 505 (2d Cir. 1980) ("[A] different rate of compensation may well be set for different types of litigation tasks"); *see also Barney v. Edison*, No. 99-CV-823 (DGT), 2010 WL 8497627, at *3 (E.D.N.Y. Jan. 29, 2010) *report and recommendation adopted sub nom. Barney v. Consol. Edison Co. of New York*, No. 99-CV-823 (KAM) (SMG), 2012 WL 911821 (E.D.N.Y. Mar. 16, 2012) (awarding paralegal rate for tasks performed by an attorney that

12

could have been performed by a paralegal), he may recover for the review of billing invoices in preparation for an application for fees. This Court found in 2010 that $130 per hour was a reasonable rate for paralegal work, *see Serricchio v. Wachovia Sec., LLC,* 706 F. Supp. 2d 237, 256 (D. Conn. 2010) *aff'd,* 658 F.3d 169 (2d Cir. 2011), and to update that rate, $140/hr will be applied here. Accordingly, Attorney Spinella's fee will be reduced by $820 (2 hrs x $410/hr) and Attorney White's fee will be reduced by $452 ($375 reduction for 1.5 hours at $250/hr + $77 (the difference between 0.7 hours—the Court's estimate of the travel time from Hartford to New Haven—billed at $250 versus $140)).

### 4. Unnecessary Work and Untimely, Unsuccessful or Dropped Claims

Defendant contends that counsel should not be awarded fees for work performed in furtherance of Plaintiff's *Monell* claim against the City of New London because that claim relied on a wholly different theory of liability than did the claim against judgment Defendant Mugovero. (Obj. to Fees Appl. at 22–26.) Defendant seeks a reduction in counsels' billable hours by any time spent on: discovery for non-judgment Defendants, research regarding the *Monell* claim, research regarding Plaintiff's state law claims (one of which failed on summary judgment and the rest of which Plaintiff abandoned at trial), and work on opposing Defendants' motion for summary judgment. (*Id.*)

Although Defendant is correct that an award must "exclude . . . hours dedicated to severable unsuccessful claims," when unsuccessful and successful claims are "inextricably intertwined" and based on the same facts, district courts have discretion to award the entire fee. *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 422 (2d Cir. 1999); *see also Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170 (2d Cir.1996) ("Where the district court determines that the successful and unsuccessful claims are 'inextricably intertwined' and

involve a common core of facts or [are] based on related legal theories, it is not an abuse of discretion for the court to award the entire fee." (internal citations omitted)).

Counsels' *legal* research on Plaintiff's failed *Monell* liability claim and his dismissed state law claims is clearly severable, and hours spent on such activities will be excluded.  This includes:

| Attorney | Entry | Date | Hours Billed |
|---|---|---|---|
| Spinella | "Review legal memos and legal research re: **Monell Liability** on part of City" | 12/17/13 | 3 |
| White | "Legal research: Owens and Turpin standard of a single egregious incident constituting a basis of a **Monell violation**; memo to Attorney Spinella on issue; legal research and memo re: **indemnification statutes** in preparation for summary judgment hearing" | 12/17/13 | 2.4 |
| White | "Opposition to Summary Judgment: prepare draft of Robillard affidavit; legal research and memo to Attorney Spinella re: requirement for medical evidence **in claims of intentional and/or negligent infliction of emotional distress**" | 10/21/13 | 3.2 |
| White | "Opposition to Summary Judgment: review of elements of **state law 'false arrest' claim**; Connecticut civil jury instructions; and **review of defense of 'probable cause' to arrest**" | 10/31/13 | 2.7 |
| Jaffe | "Legal research re: **negligence and other common law claims**" | 5/24/14 | 1.5 |

Accordingly, Attorney Spinella's fee will be reduced by $1230 (3 hrs x $410/hr), Attorney White's fee will be reduced by $2074 (8.3 hrs x $250/hr), and Attorney Jaffe's fee will be reduced by $615 (1.5 hrs x $410/hr).

However, fees for counsels' work on depositions and discovery requests directed to non-judgment Defendants will be awarded because Plaintiff's claims against every

Defendant relied on a common core of facts. Similarly, counsel will be awarded fees for their work in opposition to Defendants' motion for summary judgment because the unsuccessful claims were inextricably intertwined with the claims that survived summary judgment, and defense of those claims by Plaintiff's counsel was reasonably undertaken. The proper inquiry is not whether Plaintiff's opposition was successful, but rather whether it was a reasonable litigation strategy. *See Gierlinger v. Gleason*, 160 F.3d 858, 880 (2d Cir. 1998) (successful plaintiff in case brought under 42 U.S.C. § 1983 was entitled to fees for time spent on unsuccessful appeal of an adverse decision during an earlier stage of litigation because the appeal was reasonably undertaken); *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 393 (S.D.N.Y. 2000) ("Preventing . . . prevailing parties from recovering fees for unsuccessful efforts during the course of an otherwise successful litigation may discourage attorneys from zealously representing their clients and raising novel but reasonable arguments on their behalf."). Plaintiff's work in opposing summary judgment was reasonable.

Defendant also claims that Plaintiff should not be able to recover fees for time spent on: Plaintiff's motion to obtain video enhancement because the enhanced version of the video was not notably better than the first version (Obj. to Fees Appl. at 28); and Plaintiff's motion for sanctions for spoliation of evidence because the motion was denied "for substantially the same reasons that Defendants advanced" (*id.* at 30). However, because both motions were reasonable litigation strategies, Plaintiff may recover fees for time spent on both motions.

Next, Defendant contends that the Court should reduce Plaintiff's billable hours by the amount of time spent on: the exhibit book because it was not timely delivered;

15

Plaintiff's motion to add Richard Crawford as a witness because it was ruled untimely; and the two pretrial conferences because the second conference was necessitated by Attorney Spinella's unavailability for the first conference. (*Id.* at 31–32.) While counsel's tardiness in performing pretrial tasks is hardly a "reasonable litigation strategy," the complete witness list and exhibit book were required for trial and the time devoted to finalizing both will be allowed, as will related unsuccessful efforts to amend the witness list. The incomplete pretrial conference was the result of Attorney Spinella's illness, but his associate was present. While the more productive course may have been to send Attorney Jaffe or to request rescheduling, the time expended will be permitted.

Finally, Defendant asserts that Plaintiff's billing entries for work related to obtaining information from certain experts is not recoverable because those experts did not testify. (*Id.* at 32–33.) This argument fails because "meetings with experts who either did not testify or who were retained but did not testify or who were retained for a specific issue that plaintiff lost quite likely involved broader discussions that proved to be of assistance with other issues." *N.S. ex rel. P.S. v. Stratford Bd. of Educ.*, 97 F. Supp. 2d 224, 231 (D. Conn. 2000). Moreover, it was neither unreasonable for Plaintiff to seek disclosures from the experts, nor for Plaintiff to ultimately decide not to call such experts at trial. *See Wells Fargo Bank, NA v. Konover*, No. 3:05CV1924 (AWT), 2014 WL 3908596, at *17 (D. Conn. Aug. 8, 2014) ("[N]o amount should be deducted because the accounting expert did not testify. It was not unreasonable for Wells Fargo to have its accounting expert prepared to testify at trial if needed, and it was similarly not unreasonable for it to choose not to call its expert to testify.")

## C. Adjustments

Although the Supreme Court has "rejected a *per se* proportionality rule, i.e., proportionally linking the prevailing party's attorneys' fees to the degree of monetary success achieved, *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986), it has also held that "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained," *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Because "the product of hours reasonably expended on the litigation as a whole times a reasonably hourly rate may be an excessive amount" where the "plaintiff has achieved only partial or limited success," courts may need to adjust the presumptively reasonable rate downward. *Barfield v. N.Y. City Health and Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

Here, Plaintiff only prevailed at trial on the excessive force count against one of the defendants in a case that began with ten counts against ten defendants with a jury award of $50,000. No novel legal issues were presented by the case and the trial was neither complex nor lengthy. Nonetheless, the fact that Plaintiff succeeded on any of his claims is noteworthy given the hotly contested, contradictory testimony of what transpired in the "scrum" and the lack of clarity in the video recording of the incident as to which officer was responsible for which actions. Moreover, the Court recognizes that "a successful private action for damages can 'contribute[] significantly to the deterrence of civil rights violations in the future.'" *Robinson*, 2009 WL 3109846, at *10 (quoting *City of Riverside*, 477 U.S. at 575). Taking all of these considerations into account, a 25% reduction in the presumptively reasonable fee is appropriate so as to reflect the partial and limited success.

### D.  Awardable Costs

Defendant challenges Plaintiff's request for reimbursement of the following expenses: postage (Obj. to Fees Appl. at 33); telephone conference calls (*id.* at 34); photocopying of exhibits larger than 8½ x 11" and copying of videos onto DVDs (*id.* at 34); paralegal expenses (*id.*); and video enhancement expenses (*id.* at 35).

Under Second Circuit precedent, awardable costs include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal citations omitted). "Identifiable, out-of-pocket disbursements for items such as photocopying, travel and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate." *Aston v. Sec'y of Health & Human Servs.*, 808 F.2d 9, 12 (2d Cir. 1986); *Tsombanidis*, 208 F. Supp. 2d at 286 ("In short, with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988." (internal citations  omitted)). "Thus, costs that are allowable under § 1988 encompass a far broader range of expenses than costs that are taxable under . . . the Local Rules." *Id.*  Because the Court finds that Plaintiff's postage, conference call, photocopying, video copying, paralegal, and video enhancement costs were reasonable and of the sort ordinarily charged to clients, they are recoverable.

However, because as Defendant asserts, expert fees are not recoverable in suits brought under § 1983, *see Davis v. City of New York*, No. 10 CIV. 699 SAS, 2011 WL

4946243, at *7 (S.D.N.Y. Oct. 18, 2011) ("Pursuant to section 1988, courts only have the discretion to tax expert fees as costs in actions brought under 42 U.S.C. §§ 1981 and 1981a, not section 1983. The Supreme Court has held that section 1988 does not authorize courts to shift expert fees to the losing party as part of a 'reasonable attorney's fee' in a section 1983 case. . . . [*West Virginia Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 102 (1991)] prohibits the award of expert fees in § 1983 cases." (internal citations and quotation marks omitted)); *see also Otero v. Hous. Auth. of City of Bridgeport*, No. 398CV1935 (PCD), 2003 WL 22288647, at *3 (D. Conn. Mar. 7, 2003) ("Although the subsequent amendment to § 1988 providing for inclusion of expert fees in actions brought pursuant to §§ 1981 or 1981a softened the import of *Casey* somewhat . . . such amendment does not provide for fees in § 1983 actions as involved herein.").  Plaintiff may not recover expert fees in excess of those provided for under Local Rule 54[4] and 28 U.S.C. § 1821.  Section 1821 provides: "A witness shall be paid an attendance fee of $40 per day for each day's attendance." 28 U.S.C. § 1821(2)b).  In addition, "[a] witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance," and shall be reimbursed for "normal travel expenses."  *Id.* § 1821(2)(b), (c).  Accordingly, Plaintiff's recoverable costs will be reduced by the amount of the expert fees that exceed $40 and travel expenses.[5]

---

[4] Local Rule 54 provides that "[f]ees for expert witnesses are taxable at the same rates as any other witness."  D. Conn. L. Civ. R. 54(4)(i).

[5] The costs sought are thus reduced by $8,501.72 ($300 for Dr. Shifreen's report fee; $5,219 for Dr. Shifreen's testimony; $2,960 for Dr. Snayd's trial testimony; and $22.72 for Dr. Curland's report).

### E.  Post-Judgment Interest

In addition to requesting fees and costs, Plaintiff seeks post-judgment interest on the attorneys' fee award from the date of judgment (June 3, 2014).  (Suppl. Att'ys' Fees Appl. at 2–3.)  Defendant objects, arguing that the interest should accrue from the date on which the award is quantified.  (Obj. to Suppl. Fees Appl. at 7–8.)

As both parties note, there is a circuit split regarding whether post-judgment interest begins to accrue on the date of judgment or on the date on which the award is quantified.  While the Federal, Fifth, Sixth, Eighth, and Eleventh Circuits have found that interest accrues from the date of judgment, the Third, Seventh, and Tenth Circuits have held that it does not begin to accrue until a court has determined the amount of fees and costs owed.  Consistent with the precedent in this district, this Court adopts the majority rule, *see Albahary v. City & Town of Bristol, Conn.*, 96 F. Supp. 2d 121, 124 (D. Conn. 2000) (adopting the majority rule); *see also Hubbard v. Total Commc'ns, Inc.*, 623 F. Supp. 2d 270, 272 (D. Conn. 2009) (adopting the majority rule and noting that the court's approach in "*Albahary* has been widely cited and applied across the Circuit and is now the dominant standard with the Second Circuit."), such that interest will accrue at the weekly average one year constant maturity (nominal) treasury yield rate from the date of the judgment.

### F.  Summary

At the reduced hourly rates determined by the Court, Attorney Spinella's claimed fees is $170,847 ($410/hr x 416.7 hrs), Attorney Jaffe's claimed fee is $55,763 ($410/hr x 129.3 hrs + paralegal fees at $125/hr x 22 hrs), and Attorney White's claimed fee is $53,900 ($250/hr x 215.6 hrs).   To reflect the Court's finding above, these sums are reduced as follows:

|  | Spinella | Jaffe | White |
|---|---|---|---|
| **Duplicative & Redundant Entries** | $2870 | 0 | 0 |
| **Vague & Inaccurate Entries** | $9389 | 0 | $1127 |
| **Unnecessary Work and Untimely, Unsuccessful or Dropped Claims** | $1230 | $615 | $2074 |
| | | | |
| **Total** | $13,489 | $615 | $3,201 |

Deducting the amounts listed in "Total" above from each attorney's claim at the reduced hourly rate yields the following presumptively reasonable fees:

<u>Spinella</u>: $157,358 ($170,847 – $13,489)

<u>Jaffe</u>: $55,148 ($55,763 – $615)

<u>White</u>: $50,699 ($53,900 – $3,201)

Each of these fees is further reduced by 25% to account for Plaintiff's limited success. Accordingly Attorney Spinella is awarded **$118,018.50**, Attorney Jaffe is awarded **$41,361**, and Attorney White is awarded **$38,024.25**.  Costs awarded total **$2,750.54** plus attendance fees and travel expenses paid as authorized under 28 U.S.C. § 1821.

## IV.    Conclusion

For the foregoing reasons, Plaintiff's motions [Doc. ## 123, 142, 143] for attorneys' fees and post-judgment interest are GRANTED with modifications.  The Court awards **$200,154.29** in attorneys' fees and costs, plus post-judgment interest, accrued at the Fed rate of 0.25% from June 3, 2014, until the award is paid in full.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 12th day of March, 2015.